UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Blue Package Delivery, LLC, | Case No. 17-cv-4329 (WMW/KMM) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Express Messenger Systems, Inc., | |
| Defendant. | |

In this breach-of-contract action, Defendant moves for summary judgment as to all of Plaintiff's claims and two of Defendant's counterclaims. (Dkt. 88.) For the reasons addressed below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Blue Package Delivery, LLC (Blue Package) is a Minnesota company that ships packages for high-volume businesses. Defendant Express Messenger Systems, Inc., doing business as OnTrac (OnTrac), is a Delaware corporation that also is in the high-volume shipping industry. Blue Package contracts with third parties such as OnTrac to perform delivery services on behalf of Blue Package.

Blue Package and OnTrac entered into a carrier-transportation agreement (Agreement) in August 2015. Under the Agreement, OnTrac agreed to receive packages from Blue Package and "transport and deliver such [packages] for transportation and direct entry into the United States Postal Service (the 'USPS') or final destination delivery at the discretion of [Blue Package]." OnTrac also agreed to "transmit electronic

files for dispatch and billing as required" by Blue Package. These electronic files included data about each package, such as the package's tracking number, weight, delivery address, and Proof of Delivery (POD). In exchange for OnTrac's services, Blue Package agreed to pay the rates and charges set forth in the Agreement "within fifteen (15) days of receipt of invoice from [OnTrac]." The Agreement also establishes a "Service Target" that requires "100% of packages . . . to be delivered within two business days to the USPS," and provides that "failure to meet the Service Target requirements shall be a material breach of this Agreement." OnTrac handled more than 100,000 packages for Blue Package from October 2015 to October 2016, when Blue Package stopped using OnTrac's services.

According to Blue Package's calculations, between November 12, 2015, and January 28, 2016, OnTrac handled 31,371 packages for Blue Package. Fewer than half of these packages were delivered within the two-day Service Target required by the Agreement. During this same time period, 4,761 packages were not properly scanned by OnTrac when they were received or delivered, and 810 packages did not have USPS scans. When Blue Package inquired about the packages that were not scanned as delivered to USPS, W. Andy Webber, OnTrac's Director of Direct Post, responded: "I have no way to tell if they were delivered to the home, stuck in warehouse, or even stolen." As to the Service Target and other scanning failures, Webber admitted to Blue Package that OnTrac "struggled" to meet the Service Target and "miss[ed] some" scans.

After investigating the status of packages shipped between October 2015 and February 2016, OnTrac determined that some of the packages that were not delivered to

2

USPS were instead delivered directly to the end recipients. But OnTrac could not ascertain the actual delivery destination for 55 of the 810 packages handled during this time period that did not have a USPS scan. As to these 55 packages, OnTrac issued Blue Package a credit in June 2016 of $100 per package and an additional $1,411.36 for shipping charges, for a total of $6,911.36.

Between February 2016 and October 2016, according to Blue Package's calculations, OnTrac handled 69,596 packages and failed to deliver 1,195 packages to USPS within the two-day Service Target required by the Agreement. Also, some of the packages handled by OnTrac during the same time period were not properly scanned, and OnTrac told Blue Package that some of these packages likely had been stolen. Blue Package stopped using OnTrac's services in October 2016 and has refused to pay nine of OnTrac's invoices.

Blue Package commenced this action against OnTrac in August 2017, seeking damages based on OnTrac's alleged mishandling of "thousands of packages." Blue Package alleges three claims: breach of contract, promissory estoppel, and negligence. OnTrac asserts three counterclaims against Blue Package, alleging breach of contract, account stated, and unjust enrichment based on the nine unpaid invoices. OnTrac seeks summary judgment as to all of Blue Package's claims and two of OnTrac's counterclaims—namely, its breach-of-contract and account-stated counterclaims.

## ANALYSIS

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's

favor, there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, an opposing party must cite with particularity those aspects of the record that support any assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A); *accord Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

## I. Waiver of Claims

OnTrac first argues that Blue Package waived its legal claims by failing to submit those claims to OnTrac within 180 days after acceptance of shipment. OnTrac contends that such a waiver is implied in the parties' Agreement. Blue Package counters that the Agreement does not contain a waiver provision and, even if it did, Blue Package submitted written claims to OnTrac within 180 days after acceptance of shipment.

The parties' Agreement is governed by Minnesota law, under which a court's primary goal when interpreting a contract is "to ascertain and enforce the intent of the parties." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009). The parties' intent must be determined from the plain and ordinary meaning of the written agreement, in light of the agreement as a whole, so as to give meaning to all of its provisions. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998); *see also Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271

(Minn. 2004). As such, courts "presum[e] that the parties intended the language used to have effect," and courts will "attempt to avoid an interpretation of the contract that would render a provision meaningless." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990).

Here, the parties' Agreement includes the following clause pertaining to written notice of claims:

> All claims regarding damages to loss or delay of any shipment may be submitted in writing to the Company's office within 180 calendar days of acceptance of the shipment.

According to OnTrac, this clause *required* Blue Package to submit all claims to OnTrac in writing within 180 days after OnTrac accepted the shipment. Any such claims are waived if no written claim is submitted within that 180-day period, OnTrac contends.

"Generally, courts have found that use of the words 'may' and 'should' signify permissive clauses, while use of the words 'shall,' 'will' or 'must' signify mandatory clauses." *Fla. State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc.*, 262 F. Supp. 2d 1004, 1009 (D. Minn. 2003). Accepting OnTrac's waiver argument requires interpreting the phrase "may be submitted in writing" in the parties' Agreement as mandatory—not permissive—thereby resulting in a waiver of claims that Blue Package did not submit within the prescribed 180-day period. In support of its position, OnTrac relies on *Bonnot v. Congress of Indep. Unions, Local No. 14*, in which the United States Court of Appeals for the Eighth Circuit interpreted an arbitration clause in a collective-bargaining agreement. 331 F.2d 355, 358–59 (8th Cir. 1964). The agreement in *Bonnot* provided

5

that, if the parties failed to resolve a dispute using the grievance procedures outlined in the agreement, "either party may request arbitration." *Id.* at 359. The union argued that the agreement did not require arbitration because the use of the word "may" rendered arbitration "permissive and optional" rather than mandatory. *Id.* The Eighth Circuit disagreed:

> The obvious purpose of the "may" language is to give an aggrieved party the choice between arbitration or the abandonment of its claim. The presence of this or similar language has not prevented the conclusion that a claim, if pressed, is compulsorily subject to arbitration.

*Id.* In reaching this conclusion, the Eighth Circuit relied on *Deaton Truck Line, Inc. v. Local Union 612*, in which the Fifth Circuit held that the phrase "the dispute may be submitted to . . . arbitration" should be construed to give either party the option to compel arbitration. 314 F.2d 418, 421–22 (5th Cir. 1962).

Since *Bonnot*, the Eighth Circuit has continued to apply this reasoning when interpreting arbitration clauses that use the permissive term "may." *See, e.g.*, *Am. Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103 (8th Cir. 1990); *Anderson v. Alpha Portland Indus., Inc.*, 727 F.2d 177 (8th Cir. 1984). In *American Italian Pasta*, for example, the parties' contract required the parties to attempt to informally resolve any dispute or disagreement that arose under the contract and, if those attempts failed, "such dispute or disagreement may be submitted to arbitration." *Id.* at 1103–04. When the appellee commenced arbitration, the appellant sought a stay of arbitration on the theory that *both* parties must agree to arbitration. *See id.* at 1104. The Eighth Circuit disagreed. Relying on *Bonnot* and *Deaton*, the court concluded that the structure and language of the parties'

6

contract "reflect that [the parties] intended arbitration to be mandatory" if one party sought arbitration because otherwise "[t]here would be no reason for the arbitration language . . . [because] the parties could voluntarily have agreed to submit a dispute to arbitration in the absence of such a provision." *Id.*

Unlike *Bonnot* and *American Italian Pasta*, this case does not involve an arbitration clause. OnTrac has not cited, and the Court's research has not found, a case in this Circuit that has applied the reasoning in *Bonnot* and *American Italian Pasta* outside the context of arbitration clauses.[1] This distinction is meaningful. The written-notice clause at issue here differs from the arbitration clauses at issue in *Bonnot* and *American Italian Pasta* in several material respects.

First, courts are required to give a broad and liberal interpretation to an arbitration clause. *See Am. Italian Pasta*, 914 F.2d at 1104; *accord Bonnot*, 331 F.2d at 358. Indeed, the Federal Arbitration Act "expresses Congress' declaration of a liberal policy favoring arbitration agreements." *Am. Italian Pasta*, 914 F.2d at 1104 (internal quotation marks omitted). But this case does not involve an arbitration clause and, therefore, does not implicate the policy and principles of interpretation that guided the Eighth Circuit's

---

[1] At least two state courts from other jurisdictions have construed the term "may" as mandatory outside the context of an arbitration clause. *See, e.g.*, *Carleno Coal Sales v. Ramsay Coal Co.*, 270 P.2d 755, 757 (Colo. 1954) (holding that a contractual clause providing that a party "may" give sixty days' notice of intent to terminate the agreement early reflected the exclusive method available for early termination); *Elliott v. City of Binghamton*, 463 N.Y.S.2d 554, 556–57 (N.Y. App. Div. 1983) (holding that language "may serve a written demand . . . for a hearing" to dispute a denial of benefits required service of a written demand or abandonment of claim). But these decisions are not binding authority here and, for the reasons addressed here, the Court is not persuaded that these decisions warrant the interpretation that OnTrac advances in this case.

7

reasoning in *Bonnot* and *American Italian Pasta*. OnTrac seeks a broad and liberal interpretation of the written-notice clause in the Agreement—an interpretation that would import an implicit waiver of legal claims into the Agreement. But OnTrac has not cited, and this Court's research has not identified, any legal authority that requires a written-notice clause to be given the same broad and liberal interpretation as an arbitration clause.

Second, an arbitration clause is inherently different from the written-notice clause in this case, as is apparent when closely examining the Eighth Circuit's holdings in *Bonnot* and *American Italian Pasta*. In *Bonnot*, the court held that, if informal dispute resolution failed and either party to the contract chose to pursue a claim, that claim would be "compulsorily *subject to* arbitration." 331 F.2d at 359 (emphasis added). Consistent with the *Deaton* decision on which the Eighth Circuit relied, the *Bonnot* holding stands for the proposition that if either party to the contract invokes its option to arbitrate an unresolved claim, the other party cannot avoid arbitration. *See Deaton*, 314 F.3d at 422 (holding that "the word 'may' in the contract . . . should be construed to give either aggrieved party the *option to require* arbitration" (emphasis added)). Similarly, in *American Italian Pasta*, because one party to the contract invoked its option to arbitrate, the Eighth Circuit concluded that the other party was required to arbitrate the dispute. 914 F.3d at 1104. In short, both decisions rest on the conclusion that an option to arbitrate becomes mandatory as to both parties if one party unilaterally invokes the option.

The foregoing reasoning has no logical application to the written-notice clause in the Agreement between OnTrac and Blue Package because the overall structure, purpose, and effect of the written-notice clause is not analogous to an arbitration clause. Unlike an arbitration clause, the written-notice clause is an option that can be invoked by only one party: Blue Package. And whereas invocation of an arbitration clause imposes a duty to arbitrate on the other party, in this case the parties' Agreement does not describe what will occur if Blue Package invokes the written-notice clause, let alone that any duty on OnTrac will be imposed. The written-notice clause in this case describes a method and deadline by which to *provide notice* of a claim, not a choice between procedures to *resolve* a claim. If a party chooses not to provide written notice of a claim within 180 days, the implication of that choice is not necessarily that the party has chosen to abandon rather than to resolve the claim. There are many possible reasons why parties to a contract might desire written notice that a problem has occurred, not all of which involve resolution of the problem or preserving a legal claim. As such, unlike an arbitration clause, the written-notice clause here is not necessarily rendered meaningless if OnTrac's interpretation is not accepted.

Third, the interpretation OnTrac advances here—which results in an implicit waiver of Blue Package's legal claims if the written-notice option is not exercised—is beyond the scope of the holding in either *Bonnot* or *American Italian Pasta*. Both decisions rest on the conclusion that a contractual option to arbitrate becomes mandatory when one party unilaterally invokes the option. And neither decision involves the waiver of a legal claim. Instead, the Eighth Circuit in *Bonnot* and *American Italian Pasta*

concluded that the legal claims in those cases were brought in the *wrong forum*—conclusions that are inapposite to the circumstances presented here and to the arguments advanced by OnTrac.

For these reasons, the written-notice clause in OnTrac and Blue Package's Agreement is not analogous to the arbitration clauses in *Bonnot* and *American Italian Pasta*. The plain language of the Agreement does not clearly demonstrate what the parties intended to be the effect of invoking—or not invoking—the written-notice clause. When extrinsic evidence of the parties' intent is necessary to interpret the ambiguous terms of a contract, "the interpretation of ambiguous terms becomes a question of fact for the jury." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018). As such, a dispute of material fact exists as to the consequences of any failure by Blue Package to provide written notice of its claims to OnTrac.

Moreover, Blue Package presents evidence demonstrating that on multiple occasions it submitted written notice of its claims to OnTrac via email within 180 days after acceptance of the shipment. OnTrac argues that these emails do not satisfy the written notice contemplated by the Agreement. But OnTrac does not explain what is missing from these emails that renders the notice insufficient under the Agreement. Rather, OnTrac concedes that Webber, who was the recipient of these emails, understood the emails to require additional information to determine whether a credit, if any, may be applicable. And Webber demonstrated, in his response to one of these emails, that he understood the email from Blue Package to require him to investigate the data to ascertain "a shipping charge refund or claim."

In summary, there are genuine disputes of material fact as to whether the parties' Agreement required Blue Package to submit written notice of its claims to OnTrac within 180 days and, if so, whether Blue Package satisfied that written-notice requirement. For these reasons, OnTrac's motion for summary judgment on this basis is denied.

## II.     Blue Package's Breach-of-Contract Claim

OnTrac contends that Blue Package cannot prove a breach of the parties' Agreement and, even if a breach could be proven, Blue Package cannot prove damages. Blue Package counters that it has produced evidence that nearly 2,000 packages were not delivered within the Agreement's two-day "Service Target" requirement and, by OnTrac's own admission, some of those packages were stolen, lost, or otherwise unaccounted for. Blue Package also asserts that a genuine dispute of material fact exists with respect to its claimed damages.

### A.     OnTrac's Alleged Breach

To prove a breach-of-contract claim under Minnesota law, the claimant must allege that (1) an agreement was formed, (2) the claimant performed any conditions precedent to the claimant's right to demand performance by the opposing party, and (3) the opponent breached the contract. *Toomey v. Dahl*, 63 F. Supp. 3d 982, 997–98 (D. Minn. 2014) (citing *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)). Here, OnTrac contends that Blue Package has no admissible evidence that a breach occurred.

The parties' Agreement includes a "Service Target" that requires "100% of packages . . . to be delivered within two business days to the USPS," and provides that

"failure to meet the Service Target requirements shall be a material breach of this Agreement." Blue Package presents evidence that nearly 2,000 packages did not satsify this two-day Service Target requirement between November 2015 and October 2016, including evidence that some packages were improperly scanned or not scanned at all. Blue Package also presents evidence that OnTrac believed some of those packages had been lost or stolen. And OnTrac concedes that at least 181 packages were lost, the delivery status of at least 4 packages cannot be definitively determined, and thousands of packages were not tendered to USPS. Therefore, the undisputed evidence demonstrates that fewer than 100 percent of the packages were delivered to USPS, and disputes of material fact exist as to the exact number of packages that were not properly delivered within the two-day Service Target as required by the Agreement.

Accordingly, OnTrac is not entitled to summary judgment on Blue Package's breach-of-contract claim on this basis.

### B. Blue Package's Claimed Damages

OnTrac also argues that it is entitled to summary judgment on Blue Package's breach-of-contract claim because Blue Package does not offer any admissible evidence showing that it has been damaged by any purported breach.

To recover, the party alleging a breach of contract must have suffered damages as a result of the breach. *See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013) (applying Minnesota law). "Under Minnesota law, '[t]he controlling principle governing actions for damages is that damages which are speculative, remote, or conjectural are not recoverable.' " *Simeone v. First Bank Nat'l*

*Ass'n*, 73 F.3d 184, 189 (8th Cir. 1996) (quoting *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn. 1977)). But "a plaintiff's losses need not be proven with mathematical precision." *Id.* "Once the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." *Id.* (quoting *Leoni*, 255 N.W.2d at 826).

The parties' Agreement provides that "[p]ackages received by [OnTrac] and never delivered will result in a claim for the replacement value of the package contents, postage, reshipment of [the] package and related administrative fees assessed to [OnTrac] up to a maximum of $100 per package." The Agreement also provides that "[p]ackages manifested by [Blue Package] and misshipped by [OnTrac] will result in shipping charges and administrative fees assessed to [OnTrac]." For packages that allegedly were improperly shipped or undelivered, Blue Package seeks damages that include shipping charges, the average value of the package contents, and rerouting costs and USPS charges that Blue Package allegedly incurred as a result of OnTrac's breach.

OnTrac argues that Blue Package has not adequately quantified the shipping costs it seeks, the estimated average value of the packages that Blue Package seeks is speculative, and the rerouting costs and USPS charges that Blue Package seeks are not supported by sufficient admissible evidence.[2] For the packages in dispute, the record

---

[2] OnTrac also contends that Blue Package's damages claims cannot succeed because the parties' Agreement permits the recovery of damages only based on packages that were "never delivered" or "misshipped." As addressed above, however, it is undisputed that at least 181 packages were lost and the delivery status of at least 4 packages cannot be definitively determined. There also are disputes of material fact as to

13

contains package data that includes shipping charges for each package. The package data also includes an "Avg. order value" of $152.69 for each package. At his deposition, Blue Package's president testified that he was involved in calculating this estimated average package value based on shipment manifests, information he obtained from Blue Package's clients, and his knowledge of the types of products Blue Package typically ships for those clients. According to Blue Package, calculating the exact value of each package is not possible because Blue Package does not inspect the contents of its clients' packages. With respect to rerouting costs and USPS charges, the record includes testimony from Blue Package personnel and a USPS billing statement.

This evidence establishes a genuine dispute of material fact as to Blue Package's alleged damages. To the extent that OnTrac challenges the precision with which Blue Package has calculated the value of allegedly lost or stolen packages, the law does not require the level of precision OnTrac seeks. *See Leoni*, 255 N.W.2d at 826. And to the extent that OnTrac challenges the weight and credibility of Blue Package's evidence, this is not a proper ground for summary judgment as to damages. On this record, a reasonable jury could conclude that at least some of Blue Package's claimed damages have been proven.[3]

---

whether additional packages were improperly shipped or undelivered. Therefore, OnTrac's argument on this basis fails.

[3] The Court is mindful that, in opposing a motion for summary judgment, it is Blue Package's burden to cite with particularity those aspects of the record that are admissible in evidence and support its assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c). Notwithstanding this burden, Blue Package's briefing is highly conclusory and its reliance on record support is exceedingly sparse and includes evidence that likely

In summary, because genuine disputes of material fact exist as to OnTrac's alleged breach and Blue Package's claimed damages, OnTrac's motion for summary judgment on Blue Package's breach-of-contract claim is denied.

### III. Blue Package's Promissory-Estoppel and Negligence Claims

OnTrac also seeks summary judgment on Blue Package's promissory-estoppel and negligence claims, which seek equitable relief based on OnTrac's alleged performance failures.

OnTrac first contends that Blue Package's promissory-estoppel claim fails as a matter of law because a valid contract governs the parties' relationship. Equitable relief, such as promissory estoppel, is unavailable under Minnesota law when, as here, the rights of the parties are governed by a valid contract. *Watkins Inc. v. Chilkoot Distrib., Inc.*, 719 F.3d 987, 994–95 (8th Cir. 2013). As Blue Package does not dispute that there is a valid contract governing the parties' rights and relationship,[4] Blue Package's promissory-estoppel claim fails as a matter of law. *See id.* Summary judgment in favor of OnTrac on this claim is warranted.

---

would be inadmissible at trial. But although sparse, sufficient admissible evidence exists in the record to establish a genuine dispute of material fact as to at least some of Blue Package's claimed damages. And determining the weight and credibility of that evidence is within the province of a jury, not the Court. For these reasons, summary judgment is not warranted.

[4] Blue Package argues that its promissory-estoppel and negligence claims involve questions of fact and, thus, may not be resolved on summary judgment. But summary judgment is proper when, as here, there is no legal basis to support the claim. *See Rinehart v. City of Independence*, 35 F.3d 1263, 1265 (8th Cir. 1994).

OnTrac also contends that Blue Package's negligence claim fails as a matter of law. In support of this claim, Blue Package alleges that OnTrac "fail[ed] to perform its services competently and professionally." But Minnesota law does not recognize a cause of action for negligent performance of a contract. *Nw. Airlines, Inc. v. Astraea Aviation Servs.*, 111 F.3d 1386, 1392 n.4 (8th Cir. 1997); *accord Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 837 n.5 (Minn. Ct. App. 1994). Accordingly, OnTrac is entitled to summary judgment on Blue Package's negligence claim.

For these reasons, OnTrac's motion for summary judgment as to Blue Package's promissory-estoppel claim and negligence claim is granted.

### IV. OnTrac's Breach-of-Contract Counterclaim

OnTrac also seeks summary judgment on its breach-of-contract counterclaim, which alleges that Blue Package breached the parties' Agreement by failing to pay OnTrac for the delivery services OnTrac provided.

The parties' Agreement provides that Blue Package must pay OnTrac the rates and charges set forth in the Agreement "within fifteen (15) days of receipt of invoice from [OnTrac]." The Agreement also provides that "[p]ayments will be based on Proof of Delivery Scans (POD). If the data for POD is not received payment will be withheld from invoice." It is undisputed that Blue Package has refused to pay for nine invoices submitted by OnTrac to Blue Package, which total $49,914.

Blue Package contends that genuine disputes of material fact exist as to whether its refusal to pay these nine invoices amounts to a breach of the parties' Agreement. The record includes testimony from Blue Package's president that at least two of the nine

unpaid invoices are "incorrect" because they reflect packages that had been rerouted and were never handled by OnTrac. In addition, the record includes evidence that OnTrac did not provide POD scan data to Blue Package with respect to all of the invoiced packages, which is a basis for withholding payment under the terms of the parties' Agreement.

Because genuine disputes of material fact exist with respect to OnTrac's breach-of-contract counterclaim, OnTrac's motion for summary judgment as to this counterclaim is denied.

## V. OnTrac's Account-Stated Counterclaim

OnTrac also seeks summary judgment on its account-stated counterclaim based on the same nine unpaid invoices that give rise to OnTrac's breach-of-contract counterclaim.

An account-stated claim permits a creditor to recover a debt owed. *Am. Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 573 (Minn. Ct. App. 1984). An "account stated" is a "manifestation of assent" between the parties that the stated amount is due and owing and may be established when the debtor retains, without objecting, the creditor's statement of account for "an unreasonably long time." *Id.* An account-stated claim is "an alternative means of establishing liability for a debt other than a contract claim." *HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 370 F. Supp. 3d 1020, 1030 (D. Minn. 2019) (internal quotation marks omitted). For this reason, a party cannot pursue an account-stated claim "when there is no dispute that a written contract governs the disputed account." *Id.* (collecting cases). And double recovery for the same harm generally is prohibited. *See, e.g.*, *Daum v. Planit Sols., Inc.*, 619 F. Supp. 2d 652, 660 (D. Minn. 2009); *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379 (Minn. 1990).

Here it is uncontroverted that the parties' written agreement governs their dispute. Moreover, OnTrac's breach-of-contract and account-stated counterclaims seek identical recovery for identical alleged harm. For these reasons, OnTrac is not entitled to summary judgment on its account-stated claim.

OnTrac's motion for summary as to its account-stated counterclaim is denied.

**ORDER**

Based on the foregoing analysis and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment, (Dkt. 88), is **GRANTED IN PART** as to Plaintiff's promissory-estoppel and negligence claims and **DENIED IN PART** in all other respects.

Dated: March 12, 2020                                     s/Wilhelmina M. Wright
                                                         Wilhelmina M. Wright
                                                         United States District Judge